**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROTHSCHILD BROADCAST | ) | |
| DISTRIBUTION SYSTEMS, LLC, | ) | |
|    Plaintiff, | ) | |
| | ) | |
|   v. | ) | Case No. 21-cv-00630-MN |
| | ) | |
| MARCH NETWORKS, INC., | ) | |
| | ) | |
|    Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF**
**MARCH NETWORKS, INC.'S MOTION TO DISMISS COMPLAINT**

OF COUNSEL:

Olivia E. Marbutt
KENT & RISLEY LLC
5755 N. Point Parkway
Suite 57
Alpharetta, GA  30022
Tel: (404) 855-3865

**SAUL EWING ARNSTEIN & LEHR LLP**

James D. Taylor, Jr. (#4009)
1201 N. Market Street, Suite 2300
Wilmington, DE  19801
(302) 421-6800
james.taylor@saul.com

*Attorneys for March Networks, Inc.*

Dated: July 2, 2021

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

II. SUMMARY OF THE ARGUMENT .................................................................. 1

III. STATEMENT OF FACTS ............................................................................. 3

IV. LEGAL STANDARDS ................................................................................. 5

V. THE '221 PATENT CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 AS A MATTER
OF LAW ........................................................................................................ 7

    A. *ALICE* STEP ONE: THE '221 PATENT CLAIMS ARE DIRECTED TO THE ABSTRACT IDEA OF
REQUESTING TO RECEIVE OR STORE MEDIA CONTENT ...................................... 7

        1. *The Recited Steps Use Functional Language and a Generic "Processor" to
Describe a Common Business Practice* .................................................. 7

        2. *Numerous Decisions from the Federal Circuit and this Court Confirm that
the '221 Patent's Claims Are Directed to an Abstract Idea* ....................... 9

    B. *ALICE* STEP TWO: THE RECITED LIMITATIONS DO NOT TRANSFORM CLAIM 7 INTO
SIGNIFICANTLY MORE THAN THE ABSTRACT IDEA ......................................... 12

        1. *Each Step of the Claims Merely Describes a Component of an Abstract Idea.* 13

        2. *The '221 Patent Relies on Using Generic Computers in Conventional Ways..* 14

    C. CLAIM 7 IS REPRESENTATIVE OF THE '221 PATENT'S CLAIMS ......................... 16

VI. THE COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM FOR PATENT
INFRINGEMENT ........................................................................................... 17

VII. CONCLUSION ....................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016).................................................................................9, 13

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
    573 U.S. 208 (2014)........................................................................................... passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................18

*Atlas IP, LLC v. Exelon Corp.*,
    189 F. Supp. 3d 768 (N.D. Ill. 2016) .......................................................................17

*Blue Spike LLC v. Comcast Cable Comm'ns, LLC*,
    No. 19-159-LPSCJB, 2019 U.S. Dist. LEXIS 152005 (D. Del. Sept. 6, 2019).........................6

*British Telecommc'ns PLC v. IAC/InterActiveCorp*,
    381 F. Supp. 3d 293 (D. Del. 2019).......................................................................6, 8

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-CV-00300-JRG, 2018 U.S. Dist. LEXIS 219072 (E.D. Tex. Dec. 10, 2018) ....17, 19

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)...................................................................................7

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
    363 F. Supp. 3d 511 (D. Del. 2019)........................................................6, 13, 14, 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)................................................................................11

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)...............................................................................14

*DIFF Scale Operation Research, LLC v. MaxLinear, Inc.*,
    No. 19-2109-LPS-CJB, 2020 U.S. Dist. LEXIS 80634 (D. Del. May 7, 2020) .....................19

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)...............................................................................17

*e.Digital Corp. v. iBaby Labs, Inc.*,
    No. 15-cv-05790-JST, 2016 U.S. Dist. LEXIS 111689 (N.D. Cal. Aug. 22, 2016)...............17

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020)..................................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................................7, 14, 16

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*,
    128 F. Supp. 3d 103 (D.D.C. 2015) ...................................................................12

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)...........................................................................14

*Grecia v. Bank of N.Y. Mellon Corp.*,
    456 F. Supp. 3d 525 (S.D.N.Y. 2020).................................................................10

*Intellectual Ventures I LLC v. Symantec Corp.*,
    234 F. Supp. 3d 601 (D. Del. 2017).....................................................................11

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
    173 F. Supp. 3d 717 (N.D. Ill. 2016) ....................................................................6

*Modern Telecom Sys., LLC v. TCL Corp.*,
    No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) .........................6

*Novitaz, Inc. v. inMarket Media, LLC*,
    No. 16-cv-06795-EJD, 2017 U.S. Dist. LEXIS 81491 (N.D. Cal. May 26, 2017).................17

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)...........................................................................14

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
    379 F. Supp. 3d 857 (N.D. Cal. 2019) .................................................................12

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
    696 Fed. App'x 1014 (Fed. Cir. 2017)..................................................................10

*RainDance Techs., Inc. v. 10X Genomics, Inc.*,
    No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ..................................6

*Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*,
    No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015)................................8

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).............................................................................5

*Smartflash LLC v. Apple Inc.*,
    680 F. App'x 977 (Fed. Cir. 2017) ......................................................................10

*Super Interconnect Techs. LLC v. HP Inc.*,
    No. 19-0169-CFC, 2019 U.S. Dist. LEXIS 217315 (D. Del. Dec. 18, 2019)..........17

iii

*TriPlay, Inc. v. WhatsApp Inc.*,
  No. CV 13-1703-LPS-CJB, 2018 WL 1479027 (D. Del. Mar. 27, 2018) ..............................15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)..........................................................................................9

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)......................................................................................5, 13

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019)..........................................................................................8

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
  No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015) ......................................15

*Weisner v. Google LLC*,
  No. 20 Civ. 2862 (AKH), 2021 U.S. Dist. LEXIS 1024 (S.D.N.Y. Jan. 4, 2021)..................19

*WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571 (D. Del. 2019).............................................5

## FEDERAL STATUTES

35 U.S.C. § 101 ................................................................................................ passim

Federal Rule of Civil Procedure 12(b)(6) ...................................................................7, 8

iv

## I.     Nature and Stage of Proceedings

Plaintiff Rothschild Broadcast Distribution Systems, LLC ("Rothschild") is asserting United States Patent No. 8,856,221 ("the '221 patent") against several defendants in this District, including Defendant March Networks, Inc. ("March Networks").   D.I. 1; D.I. 1, Ex. A [hereinafter '221 patent].  Since the '221 patent was issued in 2014, Rothschild has asserted it over 100 times in various district courts.  In this District alone, Rothschild has filed more than 25 suits, each time settling before any court could reach a determination on the merits.

## II.    Summary of the Argument

The '221 patent is invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), and its progeny.  Its claims are directed to an abstract idea— enabling subscribers to request available media content or have it stored for a specified period of time.  They are similar to claim sets of numerous other patents that have been held patent-ineligible by the Federal Circuit and this Court.  Indeed, the '221 patent admits that the purported invention is based on generic and conventional computing techniques and components.  The claims add nothing that transform them into significantly more than an abstract idea.

As to *Alice* step 1, the claims are directed to an idea that consistently has been recognized as abstract.  Representative claim 7 recites a method for handling a subscriber's request to a processor to send "media content" or store it for some specified amount of time.  If the media content exists and is available, it is delivered to the subscriber unless there is a restriction preventing the subscriber from receiving it.  Courts in numerous cases have held that claims directed to managing data rights, providing selective or customized access to data, or enabling subscriptions for data storage are directed to abstract, patent-ineligible ideas.  Claims for "storing

1

media content and delivering requested media content to a consumer device" as recited in the '221 patent are no different.  '221 patent, 11:43-44.

As to *Alice* step 2, the elements of the '221 patent claims—individually or as an ordered combination—do not transform the claims into significantly more than the abstract idea of selectively delivering or storing media content based upon a subscriber's request.  There is nothing unconventional about receiving requests from subscribers, parsing requests, and delivering requested content if the subscriber is entitled to it, or storing the content.  These functions are common business practices, specifically analogous to the tasks performed at (now defunct) video rental stores, where store clerks would receive customer requests for videos and check if the customer's membership was up to date and if the videos were available.  The '221 patent merely takes this method and "applies it to a computer" in a routine way.  In fact, the patent specification discloses that the "invention" can work on any computer system or on any combination of hardware and software.

Second, the allegations of Rothschild's Complaint are insufficient to plead a plausible claim for patent infringement regarding March Networks' products and services.  The Complaint fails to plead sufficient facts plausibly asserting three claim limitations are met by the accused products and services.  Further, the Complaint fails to plead sufficient facts to plausibly establish infringement by any accused March Network product or service.  Finally, it is not plausible that the cited calendar corresponds to the required claim element of the customer's indicating a length of time to store media content.

Rothschild's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

2

### III.    Statement of Facts

March Networks is a Delaware corporation, with its headquarters in Ottawa, Canada. March Networks is a leading provider of IP video software and systems, which its customers use to enhance security, mitigate risk, and reduce losses from theft and fraud.

In the present case, Rothschild cobbles together aspects of at least three distinct March Networks products based upon a handful of screenshots of March Networks' website.  Further the Complaint parrots the language of the claim 7, without pointing to any particular configuration, feature, or functionality for 3 of the 7 claim elements.

The '221 patent generally pertains to the field of "on-demand storage and delivery of media content."  '221 patent, 1:26-27.  The patent's Background section identifies two possible concerns about streaming services, both of which are not technological in nature.  First, the specification notes that some on-demand streaming service plans charge a single flat-rate monthly subscription fee, regardless of whether a consumer watches many videos or just a few per month, while some others charge a "set fee for streaming a specific episode of a television program" regardless of the length of the show.  *Id.* at 1:47-66.  The patent also identifies a possible scenario where consumers using a streaming service may request a video that is not yet available, but then may lose interest in watching the video by the time that the service begins hosting that video for steaming.  *Id.* at 2:3-12.  The patent concludes that "[t]here is a need in the art for an on-demand media storage and streaming system that tailors cost to each consumer based on the requested media content and each consumer's needs."  *Id.* at 2:13-16.

The Summary of the Invention section describes the "present invention" as "advantageously provid[ing] a method and system for on-demand storage and delivery of media content."  *Id.* at 2:20-22.  The patent discloses a "storage and streaming system" that includes one

3

or more "consumer devices" and a "network" of servers that can be in a "cloud-computing environment." *Id.* at 3:43-55. According to the patent, the "consumer device 12" may communicate with "network 18 using communication protocols known in the art" and may include a processor "for executing computer program instructions stored in memory 26, as is well known in the art." *Id.* at 3:47-52, 66-67. A "broadcast server" may store "media content existence" information that "may indicate whether the media content exist[s], e.g., media content [is] not found because user input the wrong movie title." *Id.* at 4:23-41. A "remote server" may store media content "for a specific length of time." *Id.* at 42-55. The patent also describes that a consumer's "cost amount" for using the on-demand system can be based on the "amount of playback time corresponding to the media content" (i.e., how long the video is) or "the length of time the consumer wants to store the requested content." *Id.* at 8:20-25.

The specification describes the consumer device and servers as being comprised of conventional, generic components (i.e., processor, transmitters, receivers, and memory). The patent describes no specific configuration for the servers and, in fact, provides no information at all aside from high-level, generic functionality. The specification explains that the "invention" can be applied to any computer system or network, in any combination of hardware or software:

> The present invention can be realized in hardware, software, or a combination of hardware and software. Any kind of computing system, or other apparatus adapted for carrying out the methods described herein, is suited to perform the functions described herein. A typical combination of hardware and software could be a specialized or general purpose computer system having one or more processing elements and a computer program stored on a storage medium that, when loaded and executed, controls the computer system such that it carries out the methods described herein. The present invention can also be embedded in a computer program product, which comprises all the features enabling the implementation of the methods described herein, and which, when loaded in a computing system is able to carry out these methods. Storage medium refers to any volatile or non-volatile storage device.

4

*Id.* at 10:12-27.

The patent concludes with 13 claims.  The Complaint explicitly asserts infringement of only one claim, claim 7.  Notably, neither claim 7 nor any other claim is specifically directed to solving the concerns about streaming services discussed in the Background section regarding a consumer being overcharged the same amount regardless of the duration of a video, or a consumer losing interest while waiting for a video to be made available.

## IV.    Legal Standards

As a question of law, patent eligibility may be resolved on the pleadings.  As the Federal Circuit explains, patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019) (noting it is "well-settled" to determine patent eligibility at motion to dismiss stage and collecting cases).

Moreover, a court may resolve patent eligibility before claim construction.  As the Federal Circuit explains, "addressing section 101 at the outset of litigation will have a number of salutary effects," including conserving judicial resources and exposing "basic deficiencies" in a complaint before the parties expend excess time and money.  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring) (internal quotation marks omitted).  When, as here, the claims "disclose[] no more than an abstract idea garnished with accessories and there [i]s no reasonable construction that would bring [them] within the patentable subject matter," a court should resolve patent eligibility before claim construction.  *Id.* at 719 (internal quotation marks omitted).  Further, when it is clear even without claim construction that a patent does not contain details about how computer components are " 'manipulated' or otherwise programmed to yield

5

results . . . no formal claim construction is required." *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 725 (N.D. Ill. 2016).

When evaluating patent eligibility, a court first must determine whether a claim is "directed to" a patent-ineligible concept, such as an abstract idea ("step one"). *Alice*, 573 U.S. at 217.  For example, a claim is abstract when the language "is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved." *British Telecommc'ns PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 305 (D. Del. 2019).  If the claim is directed to a patent-ineligible concept, the court then must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" that is significantly more than a claim to the abstract idea ("step two").  *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)).  An abstract idea itself, "no matter how beneficial," cannot serve as the inventive concept for step two.  *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 523 (D. Del. 2019).

With regard to an allegation of direct infringement, a plaintiff needs to have pleaded facts that plausibly indicate that an accused instrumentality practices each of the limitations asserted in the relevant claims.  *See Blue Spike LLC v. Comcast Cable Comm'ns, LLC*, No. 19-159-LPSCJB, 2019 U.S. Dist. LEXIS 152005, at *3 (D. Del. Sept. 6, 2019); *RainDance Techs., Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2016 WL 927143, at *2-3 (D. Del. Mar. 4, 2016).  If, after reading a complaint, the Court cannot conclude that it is plausible that the accused infringer's product reads on a limitation of an asserted claim of a patent- in-suit, then it cannot be plausible that the accused infringer actually infringes that patent claim.  *Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) (citing cases).

6

## V.     The '221 Patent Claims Are Invalid Under 35 U.S.C. § 101 As A Matter of Law

The Supreme Court has strongly signaled that federal courts should root out patents unworthy of the limited monopoly conferred by the patent laws, including so-called business-method patents that purport to cover basic practices in the commercial marketplace. The patent in this case is directed to an abstract idea and contains no steps sufficient to confer patent eligibility.

The '221 patent claims are directed to the abstract idea of enabling subscribers to request available media content or have it stored for a specified period of time. The recited limitations do not recite anything unconventional that would amount to significantly more than the abstract idea itself. The specification confirms that the "invention" is directed to purely functional limitations, applying an abstract concept to a generic computer network.

### A.  *Alice* Step One: The '221 Patent Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content

The Court's inquiry under 35 U.S.C. § 101 begins by "looking at the 'focus' of the claims, their character as a whole," to assess whether they are directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) For this step, "the specification must always yield to the claim language" when identifying "the true focus of a claim." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

#### 1.   The Recited Steps Use Functional Language and a Generic "Processor" to Describe a Common Business Practice

Claim 7 is directed to "[a] method for storing media content and delivering requested media content to a consumer device." '221 patent, 11:43-44. Similarly, the Summary of the Invention characterizes "[t]he present invention" as "advantageously provid[ing] a method and system for on-demand storage and delivery of media content." *Id.* at 2:20-22.

The claimed method recites the following steps:  (a) receiving messages from consumers requesting content; (b) confirming that the consumer is using a registered consumer device; (c) determining whether the consumer has sent a request for immediate delivery or for storage; (d) if the consumer is registered and is requesting to receive content, delivering the content if it is available and not restricted; and (e) if the consumer is registered and is requesting to have content stored, storing the content if it is available, for an amount of time specified by the consumer.  *Id.* at 11:43-12:24.   Thus, the claim recites generic, functional outcomes such as "receiving," "determining," and "delivering," but does not describe how to achieve them in a non-abstract way. Put simply, if the consumer is authorized and if the content is available, then the consumer can receive it or have it stored.  This sort of functional claiming has long been rejected under § 101. *See British Telecommc'ns*, 381 F. Supp. 3d at 305-07.

The claims of the '221 patent recite that steps are performed by a generic "processor," but a human easily could do the same.  *See, e.g.*, '221 patent, 2:25-33.  Indeed, the steps in the '221 patent have been aptly compared to steps that a video store clerk typically performed when customers sought to rent a video from a store.  *See* Memorandum in Support of Motion to Dismiss, at 14-15, *Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*, No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015).   Each step or function of the claims of the '221 patent directly corresponds to a longstanding business practice, which is performed on a generic "processor." *Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) ("Claims . . . directed to longstanding commercial practices do not pass step one of the two-part § 101 test."); *see Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (invalidating a "do it on a computer" patent).

8

Each step of the claim directly corresponds to a longstanding business practice that was ubiquitous throughout the 1980s and 1990s: renting videos to watch at home on VCRs. The '221 patent merely applies this same method to be performed on a generic "processor."

### 2. Numerous Decisions from the Federal Circuit and this Court Confirm that the '221 Patent's Claims Are Directed to an Abstract Idea

Controlling precedent confirms that Rothschild's claims are directed to an ineligible abstract idea. Several decisions are illustrative.

While inventions that improve *how to stream* media may be technological in nature, claims simply directed to *when to authorize media streaming* have been found to be patent ineligible as abstract. For example, in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) the claim was "directed to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface." *Id.* at 1268. Finding the claim abstract, the court determined that the patent disclosed no particular mechanism for wireless streaming to a handheld device, and that "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* at 1269. Likewise, the '221 patent recites functional steps for storing and delivering media content, but does not recite a "concrete embodiment" of that idea. *Id.* The '221 patent generically describes computer components that receive and parse requests for delivery or storage of media content.

Similarly, in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017), the Federal Circuit found claims on a control mechanism for managing users who are receiving real-time information to be abstract for using generic, functional language. There, the claim recited steps of "converting," "routing," "controlling," "monitoring," and "accumulating records," but failed to "sufficiently describe how to achieve these results in a non-abstract way."

9

*Id.* at 1337.  Again, the '221 patent is analogous.  The '221 claims list a series of functional steps—including "receiving," "determining," and "initiating delivery"—but lack specific details.  The patent does not specify how components communicate with each other or how media content is streamed or stored.  Rather, the patent concedes that the consumer devices and central processing unit operate in ways "well known in the art."  '221 patent, 3:61-67.  The functional claims and generic components underscore the patent's abstract focus.

Courts also have found claims pertaining to making content only selectively accessible over a network to subscribers to be abstract.  In *Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 Fed. App'x 1014 (Fed. Cir. 2017), the Federal Circuit found claims to be abstract that were directed to a process of "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources."  *Id.* at 1017.  More recently, the Federal Circuit held that a telecommunications patent claiming "a system for controlling access to a platform" was ineligible.  *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1325 (Fed. Cir. 2020).  The patent was directed to "controlling access by receiving a request and then determining if the request should be granted," nothing more than a "bare abstract idea."  *Id.* at 1326; *see also Grecia v. Bank of N.Y. Mellon Corp.*, 456 F. Supp. 3d 525, 531-32 (S.D.N.Y. 2020) (determining that a patent for digital rights management was directed to the abstract idea of storing information about permission and identity for processing access requests); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 984 (Fed. Cir. 2017) ("In sum, the asserted claims are all directed to the abstract idea of conditioning and controlling access to data based on payment, and fail to

recite any inventive concepts sufficient to transform the abstract idea into a patent-eligible invention.").

Like *Prism Technologies*, *Ericsson*, *Grecia*, and *Smartflash*, the '221 patent involves selective access to media content. The claims make this explicit. *See* '221 patent, 12:1-2, 18-22 ("determining whether the consumer device identifier corresponds to a registered consumer device" and determining "whether there are restrictions associated with the requested media content"). The specification reinforces the theme of selective access: subscribers to an on-demand video service are allowed to access media content while non-subscribers are not. *Id.* at 5:8-10 ("Remote server 16 determines whether the request message is received from a registered user"). Claims directed to controlling access to resources are abstract.

In addition, courts have found that claims pertaining to storing or backing up data are abstract. In *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 607 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018), this Court held that a patent directed to backing up data was invalid, explaining that "institutions have long backed up data in general." *Id.* at 607. The patent did not improve computer technology itself, but merely "rel[ied] on the ordinary storage and transmission capabilities of computers within a network and appl[ied] that ordinary functionality in the particular context of remote mirroring." *Id.* And in *Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) the Federal Circuit similarly stated, "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* at 1348.

Other district courts also acknowledge that collecting, recognizing, and storing data are abstract ideas. One court found that a patent claim directed to a "Personal Cloud" product for "uploading and downloading data from a [customer device] to a server by way of a mobile network"

11

was abstract.  *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 862 (N.D. Cal. 2019).   The patent described generic computer components and generic formatting, transmitting, and retrieval steps.  *Id.* at 874-76.  And the court analogized the computer server of the invention to a human manually transferring data.  *Id.* at 878.  Likewise, another court held that patents directed to storing and retrieving information are invalid, explaining that "[h]umans have been collecting and organizing information and storing it in printed form for thousands of years."  *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 112 (D.D.C. 2015) *aff'd*, 653 F. App'x 764 (D.C. Cir. 2016).

As its title highlights, the '221 patent is directed in part to "storing broadcast content in a cloud-based computing environment."  '221 patent, 1:1-3.  But the claim limitations relating to storage are basic.  The steps include determining whether a given request is a storage request and, if so, determining whether the content is available for storage.  *Id.* at 12:5-10.  The limitation of "a length of time to store the requested media content" does not make the idea any less abstract.  *Id.* at 12:14-15.  Claims directed to storing data are abstract, even when performed within computer networks and limited to a "particular context."  *Symantec*, 234 F. Supp. 3d at 607.

In short, the focus of the '221 patent claims is a system that provides selective access to content for subscribers or gives subscribers the option to store content for a specified amount of time.  To the extent that technology is involved, it is because the steps are performed via generic and conventional processors and techniques.  In addition, claim 7 is not directed to a concrete result.  For these reasons, the claims of the '221 patent are patent-ineligible.

> **B.** *Alice* **Step Two: The Recited Limitations Do Not Transform Claim 7 into Significantly More than the Abstract Idea**

Because the asserted claim is directed to an abstract idea, it is invalid unless it embodies an "inventive concept" that is "significantly more" than the abstract idea, under "step two."  *Alice*,

12

573 U.S. at 217-18.  But the '221 patent claims are not significantly more than an abstract idea. The purported "invention" is claimed through routine, functional steps that do not improve how a computer functions.  Indeed, the patentee acknowledges that its "media content system" is generic, comprising any network of servers implemented in hardware, software, or combination of the two. Accordingly, the claimed method does not amount to significantly more than the abstract idea itself.

### 1. Each Step of the Claims Merely Describes a Component of an Abstract Idea

Whether considered individually or as a whole, the recited steps of the '221 patent claims do not "do significantly more than simply describe [the] abstract method." *Ultramercial*, 772 F.3d at 715.  Steps for "receiving" a request, "determining" whether the subscriber is registered, and "determining" whether the identified media content is available and permitted to be delivered or stored merely follow the abstract idea itself.  *See Citrix*, 363 F. Supp. 3d at 523 (holding that the abstract idea itself cannot serve as the inventive concept).

One would expect that, to enable subscribers to request available media content or have it stored for a specified period of time, one would perform steps to check if the request was from an authorized subscriber and whether the media content was available.  Running checks against information stored in a database is a well-known and routine computer function.  And, of course, the concept of a consumer device accessing a network to request and receive information is not inventive.  *See Affinity Labs*, 838 F.3d at 1271-72.  Even the added limitation of storing the content for a requested "length of time" amounts to nothing more than the abstract concept itself.

According to the patent's Background, the purported invention solves the problem of conventional pricing models for on-demand streaming, which may bill at a flat rate regardless of how much television a particular consumer watches, or bill per video at a set price no matter how

13

long the television show runs.  The patent also notes that some consumers will request a video or television program that is not yet available, but will lose interest by the time that the content becomes available.  Even if the claims provided a "solution" for these "problems," they would not be directed to technological improvements to the functioning of a computer to constitute patent eligible subject matter.  In any event, the patent's claims do not specifically solve any such problems.  Asserted claim 7 makes no mention of "cost."  These claims do not pertain to inventive subject matter and are not directed to technological solutions.  *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (holding that claims directed to "the ability to automate or otherwise make more efficient traditional price-optimization methods" are abstract).  Finally, claim 7 does not solve the "lose of interest" problem, and once again, this does not pertain to patent eligible subject matter anyway.

### 2.  The '221 Patent Relies on Using Generic Computers in Conventional Ways

In the context of computer-implemented inventions, there is no inventive concept when "[n]othing in the claims, understood in light of the specification, requires anything other than [an] off-the-shelf, conventional [processor networked with generic computers]."  *Elec. Power Grp.*, 830 F.3d at 1355; *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (holding that "already-available computers" will not save a claim under *Alice* step two).  The '221 patent fails in this respect, as well.

This Court has repeatedly invalidated patents that purport to apply broadly to various computers, over various networks, and across various technology fields.  For example, in *Citrix*, the patent disclosed that the invention could operate on "any such network or network topology as known to those ordinarily skilled in the art" and included an application "which can be any type and/or form of software."  363 F. Supp. 3d at 514.  The Court concluded that the claims included

14

only conventional elements.  *See id.*  Indeed, by touting the general applicability of the invention, the patent undermined the patentee's argument that it was solving "computer-centric problems with computer-centric solutions."  *Id.*  In another case, a patent disclosed that "the invention is neither limited by the types of computers used as servers, nor the operating systems, web server or database server application software running on such servers."  *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *9 (D. Del. Sept. 30, 2015). This Court concluded that the patent claims contained no inventive concept, only generic hardware and software.  And in a third case, a patent stated that "[t]hose versed in the art will readily appreciate that the invention is . . . applicable to any network architecture facilitating messaging between communication devices."  *TriPlay, Inc. v. WhatsApp Inc.*, No. CV 13-1703-LPS-CJB, 2018 WL 1479027, at *8 (D. Del. Mar. 27, 2018) *aff'd*, 771 F. App'x 492 (Fed. Cir. 2019).  The Court cited to this very language as evidence of the patent's ineligibility.  *Id.*

The language in the '221 patent closely resembles the broad language found in the ineligible patents, above.  The patent states that "[t]he present invention can be realized in hardware, software, or a combination of hardware and software."  '221 patent, 10:12-13.  It concedes that "[a]ny kind of computing system, or other apparatus . . . is suited to perform the functions described herein."  *Id.* at 10:13-15.  The patent further explains that the computer may be a specialized or general purpose computer, or that the invention could be embedded in a "computer program product."  *Id.* at 10:17-23.  The consumer devices may be "mobile phones, personal digital assistant devices, personal computers, . . . digital video recorders, televisions, digital versatile disc players, among other devices that may communicate via network."  *Id.* at 3:56-60.  And the patent repeatedly acknowledges that its components function in conventional ways.  *See, e.g.*, *id.* at 3:61-62 ("Consumer device 12 may communicate with network 18 using

15

communication protocols known in the art."); *id.* at 3:65-67 ("Processor 24 may include a central processing unit (CPU) for executing computer program instructions stored in memory 26, as is well known in the art.").  This sweeping language—encompassing hardware, software, and *any* computing system—confirms that the '221 patent recites only conventional elements.

Nothing in the '221 patent transforms the abstract idea to which the patent claims are directed into patent-eligible subject matter.  Accordingly, the '221 patent claims are invalid and Rothschild's Amended Complaint should be dismissed for failure to state a claim.

### C.  Claim 7 is Representative of the '221 Patent's Claims

In assessing invalidity for lack of patentable subject matter, a court may evaluate a representative claim rather than reviewing each asserted claim.  *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1352.  Here, claim 7 is the only claim identified in the Complaint.  Dkt. 1, ¶23.  Rothschild does not indicate it is asserting any other claims, but in any event, the remaining claims are also abstract and do not embody "significantly more" than an abstract concept.[1]

---

[1] System claim 1 is essentially word-for-word the same as method claim 7, thus method claim 7 is representative of system claim 1.  The dependent claims are similarly directed to an abstract idea, adding only insubstantial limitations to claim 7.  Claims 2 and 8 recite a "storage confirmation message" indicating "whether the requested media content is available for storage," which directly pertains to the limitation in claim 1 that the processor "determines" whether the message is available to be stored.  Claims 3, 4, and 9 recite "providing a message prompting a user to register a consumer device," "stor[ing] user data corresponding to an end user media consumer," and "sending a registration message prompting registration of the consumer device," all of which pertain to claim 1's limitation of "determining whether the consumer device identifier corresponds to a registered consumer device."  Similarly, claims 5, 6, and 11 pertain to verifying a consumer device identifier and transmitting content upon verifying the consumer.  Finally, claims 12-13 pertain to the abstract concepts of informing the consumer of the cost of the requested media content (claim 12) and doing the same where the cost does not vary based upon the number of times the content is delivered (claim 13).  All of these dependent claims are just as abstract as claim 7.  The other claims either  pertain to the same concepts already addressed in claim 7 or otherwise add generic concepts about consumer costs, which are well understood to be unpatentable as abstract.

38699706.1

## VI.     The Complaint Fails to Plead a Plausible Claim for Patent Infringement

The Court should also dismiss Rothschild's Complaint for failing to state a claim upon which relief can be granted because it does not plead sufficient facts to support a plausible claim of infringement regarding the accused March Networks products.

To plead a plausible claim of direct patent infringement, a complaint must "at least contain factual allegations that the accused product practices *every element* of at least one exemplary claim." *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD, 2017 U.S. Dist. LEXIS 81491, at *7 (N.D. Cal. May 26, 2017) (emphasis added); *see also e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 U.S. Dist. LEXIS 111689, at *13 (N.D. Cal. Aug. 22, 2016) (granting a motion to dismiss when the complaint did not map a particular claim limitation onto the accused product); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 776 (N.D. Ill. 2016) (same).  Only in the rare situation when a patent is directed to "simple technology" and plausibility is readily ascertainable from the factual materials included with the complaint is it unnecessary to plead factual allegations for each claim limitation.  *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) *see also Super Interconnect Techs. LLC v. HP Inc.*, No. 19-0169-CFC, 2019 U.S. Dist. LEXIS 217315, at *5 n.3 (D. Del. Dec. 18, 2019) (rejecting argument that *Disc Disease* does not require limitation-by-limitation factual allegations when claimed patent did not involve "simple" technology); *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 U.S. Dist. LEXIS 219072, at *4-5 (E.D. Tex. Dec. 10, 2018) (Gilstrap, J.) (finding *Disc Disease* inapposite and granting motion to dismiss because conclusory statements and screenshots for individual claim limitations were insufficient to state a claim).

Rothschild's Complaint should be dismissed because it fails to plead facts making it plausible that the accused products infringe claim 7.   Rothschild's allegations are fatally

17

inadequate because Rothschild fails to plead facts making its allegations plausible as to every element of claim 7. Instead, for several claim limitations, Rothschild merely parrots the claim language and asserts that "[c]ertain aspects of these elements are illustrated in the screenshots provided in connection with other allegations herein." *See, e.g.*, Dkt. 1, ¶¶33, 34.

For example, claim 7 requires "determining whether the consumer device identifier corresponds to a registered consumer device." '221 patent, 12:1-2. Claim 7 also requires that "the first processor is further configured to determine whether the requested media content exists." *Id.*, 12:16-17. Claim 7 further requires that "if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device." *Id.*, 12:18-24. For each of these allegations, Rothschild simply restates the claim limitation and alleges that "[c]ertain aspects of these elements are illustrated in the screenshots provided in connection with other allegations herein." *See* Dkt. 1, ¶¶28, 33,[2] 34.

These naked assertions that several claim limitations are present in the accused products lack any articulated factual basis and, therefore, fall well short of the pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662 , 678 (2009).

Courts throughout the country, including this Court, have found that a patentee cannot satisfy the *Twombly/Iqbal* standard merely by copying the language of claim limitations and alleging their presence without alleging sufficient underlying facts. *Chapterhouse*, 2018 U.S. Dist. LEXIS 219072, at *5 (finding that complaint incorporating claim charts and screenshots of the

---

[2] Paragraph 33 further states that "[c]ertain aspects of these elements are illustrated in the screenshots below." However, there are no screenshots included in Paragraph 33.

accused product failed to state a claim because "Plaintiff must further allege *how* the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations" under *Iqbal*/*Twombly* (emphasis added)); *see also DIFF Scale Operation Research, LLC v. MaxLinear, Inc.*, No. 19-2109-LPS-CJB, 2020 U.S. Dist. LEXIS 80634, at \*7 (D. Del. May 7, 2020) ("[T]he patentee cannot meet its obligation to assert a plausible claim of direct infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim limitation, and then flatly stating—without more—that Defendants' accused products have or perform such a limitation."); *Weisner v. Google LLC*, No. 20 Civ. 2862 (AKH), 2021 U.S. Dist. LEXIS 1024, at \*2 (S.D.N.Y. Jan. 4, 2021) ("Paraphrasing claim limitations and making conclusory allegations that Defendant's product infringes the patent are insufficient to survive a motion to dismiss.").  The allegations here are no different; the Court should find that Rothschild likewise fails to state a claim.

Rothschild's allegations suffer from additional defects.  Rothschild defines the accused products to be "*the* March Networks video recording security platform."  Dkt, 1, ¶25.  But its allegations are not related to a single "March Networks video recording security platform."  Nor is there simply one March Networks "video recording security platform."  In fact, Plaintiff's allegations identify at least three different March Networks products—March Networks Insight, Searchlight, and Command Mobile.  *See*, *e.g.*, *id.*, ¶26.

Further, Rothschild does not accuse one of the three identified March Networks products as infringing each element of the asserted claim.  For example, Rothschild identifies functionality for Searchlight for only three of the eight claim elements.  *Id.*, ¶¶26, 27, 30.  Similarly, Rothschild accuses functionality of March Networks Insight for five of the eight claim elements, *id.*, ¶¶26, 27, 29, 30, 31, and four of the eight claim elements for Command Mobile, *id.*, ¶¶26, 27, 29, 32.

Finally, Rothschild's identification of certain accused functionality is at odds with the screenshots of March Networks' website, such that Rothschild fails to allege a plausible claim of infringement.  Rothschild alleges that the '221 patent requires "a method of storing (e.g., cloud storage) media content (e.g., video recording)."  Dkt. 1, ¶26.  For this claim element, March Networks provides a screenshot regarding Insight.  While the screenshot does state that Insight is a "cloud-based service," there is nothing to indicate that Insight provides a "method of storing . . . media content" or has anything to do with media content or video recordings at all.  Rather, the language Rothschild points to makes it abundantly clear that Insight is a service for trouble-shooting a video network.  Rothschild's Complaint is replete with such errors.

Having failed to make out a plausible claim for infringement, Rothschild's Complaint should be dismissed for failure to state a claim.

## VII.    Conclusion

For the foregoing reasons, March Networks respectfully requests that the Court dismiss Rothschild's Complaint in its entirety, with prejudice.

**SAUL EWING ARNSTEIN & LEHR LLP**

*Of Counsel:*                          /s/  *James D. Taylor, Jr.*
Olivia E. Marbutt                      James D. Taylor, Jr. (#4009)
KENT & RISLEY LLC                      Charles E. Davis (#6402)
5755 N. Point Parkway                  Aubrey J. Morin (#6568)
Suite 57                               1201 N. Market Street, Suite 2300
Alpharetta, GA  30022                  Wilmington, DE  19801
Tel: (404) 855-3865                    (302) 421-6800
                                       james.taylor@saul.com

                                       *Attorneys for Defendant March Networks, Inc.*

Dated: July 2, 2021

21